IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello

Civil Action No. 17-cv-02281-CMA

SHERRY SUE COTHRAN,

    Plaintiff,

v.

NANCY BERRYHILL, Acting Commissioner of Social Security,

    Defendant.

---

**ORDER AFFIRMING THE DECISION OF THE ADMINISTRATIVE LAW JUDGE DENYING DISABILITY INSURANCE BENEFITS**

---

This matter is before the Court on Plaintiff Sherry Sue Cothran's appeal of the Commissioner's decision denying her claim for disability insurance benefits (DIB). (Doc. # 14.) Exercising jurisdiction under 42 U.S.C. § 405(g), this Court affirms the decision of the Administrative Law Judge (ALJ).

## I.    BACKGROUND

In October 2013, Plaintiff applied for DIB, alleging disability beginning in March 2012, due to a number of impairments. Plaintiff's claim was initially denied, and she requested a hearing. The ALJ conducted two hearings—one in October 2015 and the other in April 2016—ultimately finding that Plaintiff was not under a "disability" as defined in Title II of the Social Security Act. Plaintiff appealed the ALJ's denial, submitting new evidence to the Appeals Council in support. In August 2016, the

Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner.

## II. STANDARD OF REVIEW

Review of the ALJ's disability finding is limited to determining whether the ALJ applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *Angel v. Barnhart*, 329 F.3d 1208, 1209 (10th Cir. 2003). The district court may not reverse an ALJ simply because it may have reached a different result based on the record; the question instead is whether there is substantial evidence showing that the ALJ was justified in her decision. *Ellison v. Sullivan*, 929 F.2d 534, 536 (10th Cir. 1990). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007). The Court will not "reweigh the evidence or retry the case" but must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Id.*

## III. LAW

"Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . . ." 42 U.S.C. § 423(d)(1)(A). The Act further provides that

> "[a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial work which exists in the national economy. . . ."

42 U.S.C. § 423(d)(2)(A). The claimant bears the burden of proving that he is disabled. 20 C.F.R. § 404.1512(a); *Wall v. Astrue*, 561 F.3d 1048, 1062 (10th Cir. 2009).

The Commissioner has established a five-step sequential evaluation process to determine whether a claimant is disabled. 20 C.F.R. § 416.920(a)(4). The steps of the evaluation are whether: (1) the claimant is currently working; (2) the claimant has a severe impairment; (3) the claimant's impairment meets an impairment listed in Appendix 1 of the relevant regulation; (4) the impairment precludes the claimant from doing her past relevant work; and (5) the impairment precludes the claimant from doing any work. *See* 20 CFR 404.1512(g), 404.1560(c), 416.912(g), and 416.960(c); *Pisciotta v. Astrue*, 500 F.3d 1074, 1076 (10th Cir. 2007). A finding that a claimant is or is not disabled at any point in the five-step evaluation process is conclusive and terminates the analysis. *Casias v. Sec'y of Health & Human Serv.*, 933 F. 2d 799, 801 (10th Cir. 1991).

## IV. ANALYSIS

In this case, the ALJ proceeded through the first three steps in the sequential process. The ALJ concluded that Plaintiff (1) had "not engaged in substantial gainful activity since March 31, 2012, the amended alleged onset date"; (2) suffered from "the following severe impairments: degenerative disc disease and facet osteoarthritis of the lumbar spine; obesity; adjustment disorder; and depressive disorder"; and (3) did not have an "impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments." (Doc. # 11-2 at 85–86.)

Before addressing the fourth step, the ALJ assessed Plaintiff's residual functional capacity (RFC) and concluded that Plaintiff had the RFC to perform "a less than full range of light work as defined in 20 CFR 404.1567(b)." (*Id.* at 89.) She added:

> [Plaintiff] can perform lifting, carrying, pushing and/or pulling 20 pounds occasionally and 10 pounds frequently, standing and/or walking for about six hours in an eight-hour workday, and sitting about six hours in an eight-hour workday. She is able to understand, remember, and carryout tasks learned in up to and including six months. She is limited to occasional climbing of ladders; no work at hazardous heights; occasional work around moving machinery and occasional driving for work; frequent stopping, balancing, and climbing of ramps and stairs; and occasional kneeling crouching, and crawling.

(*Id.*) At the fourth step, the ALJ determined Plaintiff was "capable of performing past relevant work as a receptionist [because] [that] work does not require the performance of work-related activities precluded by [Plaintiff's RFC]." (*Id.* at 95.)

On appeal, Plaintiff contends the ALJ failed to adequately consider the medical opinions of several physicians and erred in her evaluation of Plaintiff's symptoms in light of the entire medical record. Plaintiff also argues that the Appeals Council erred in declining to consider the new evidence she supplied to it. The Court addresses each of Plaintiff's contentions in turn.

### A. MEDICAL OPINIONS

In assessing Plaintiff's RFC, the ALJ considered the opinions of various physicians and made findings about the weight she accorded each one. As pertinent here, the ALJ accorded little weight to treating physician Dr. Natasha Deming, some weight to the opinion of consulting physician Dr. Peter Weingarten, and considerable

4

weight to the opinion of consulting psychologist Dr. Frederick Leidal. (Doc. # 11-2 at 93–94.) Plaintiff contends that the ALJ improperly "discounted" these opinions which were entitled to "controlling or significant weight" because they were "well supported"; Plaintiff adds that the ALJ inserted her "lay opinion" for that of these medical experts. (Doc. # 14 at 17–27.)

   1. Legal Principles

The ALJ must identify the weight accorded to the opinion of medical consultants and examiners and also explain the basis for said weight. *Watkins v. Barnhart,* 350 F.3d 1297, 1300 (10th Cir. 2003); *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004). The ALJ's explanation must be sufficiently specific to make clear to any subsequent reviewers both the weight given to the medical opinion and the reasons therefor. *Id*. The question governing this Court's review is not, as Plaintiff argues, whether the physicians' opinions were "well supported," but rather whether the ALJ's findings with respect to the weight given to those physicians' opinions were based on substantial evidence. This Court cannot re-weigh evidence or resolve conflicting medical opinions. *See Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) (noting that "the ALJ is entitled to resolve any conflicts in the record"); *Zoltanski v. FAA*, 372 F.3d 1195, 1200 (10th Cir. 2004) (stating that we may not "displace the agency's choice between two fairly conflicting views") (brackets omitted). Moreover, "the ALJ, not a physician, is charged with determining a claimant's RFC from the medical record." *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012).

   2. Analysis

### a. Dr. Natasha Deming

Dr. Deming was Plaintiff's treating physician in late 2014 and early 2015. The record reflects treatment notes from three visits with Plaintiff. In December 2014, Dr. Deming submitted a Medical Source Statement in which she opined that Plaintiff suffers from "fatigue [and] mid and low back pain . . . worsened by activity (shopping, cleaning, etc.)." (Doc. # 11-9 at 450.) She added that Plaintiff experienced "paraspinous muscle spasm[s], point tenderness over lumbar spine, [and] sciatic sign on left side"; that she "must" use a cane or other assistive device for standing and walking; and that she could only

- walk about 1–2 city blocks without rest or severe pain;
- sit for 20 minutes before needing to get up;
- stand for 5–10 minutes before needing to move around;
- sit for about 4 hours in an 8-hour work day;
- stand/walk for less than 2 hours in an 8-hour work day; and
- lift 10 pounds occasionally and 20 pounds rarely.

(*Id.* at 450–53.)

In assessing Dr. Deming's opinion, the ALJ concluded:

> While Dr. Deming is a treating provider, this opinion is given little weight as it is inconsistent with Dr. Deming's own treatment records showing nothing more than lumbar tenderness and occasionally positive straight leg raising, but no significant neurological deficits. More specifically, just four days[1] prior to her opinion, Dr. Deming's physical

---

[1] The Court notes that this is incorrect. The examination occurred one month before Dr. Deming prepared her opinion, not four days. The ALJ's citation to the record, however, demonstrates

6

> findings noted the [Plaintiff] to have full strength, normal
> range of motion and sensation, with no reports of numbness
> or gait abnormalities (Exhibit 7F, pgs 2–3). Additionally, her
> opining the [Plaintiff's] need for an assistive device for
> ambulation, with no corroboration from her own or any
> treatment records appears an extreme over estimate of the
> [Plaintiff's] functional limitations and lessens the
> persuasiveness of her overall opinion.

(Doc. # 11-2 at 93.)

Plaintiff argues that, because Dr. Deming was Plaintiff's treating physician, her opinion was entitled to "special significance" and that the ALJ erred in concluding otherwise. After reviewing the relevant portions of the record, the Court disagrees and instead finds that the ALJ was justified in her decision to accord Dr. Deming's opinion "little weight."

The applicable regulations provide that if "well-supported by medically acceptable clinical and laboratory diagnostic techniques and . . . not inconsistent with the other substantial evidence in the case record," the ALJ is required to give a treating physician's opinion controlling weight. 20 C.F.R. § 404.1527; SSR 96-8P (S.S.A. July 2, 1996). Here, however, the ALJ found that Dr. Deming's opinion was not supported or consistent with other evidence in the case record—including her own treatment notes. And that finding has record support. Dr. Deming's treatment notes, which range from November to February 2015, reflect some lower back paraspinal muscle pain and left leg tingling, with one positive straight leg raise test, which she characterized as a "mild stretching sensation." (Doc. # 11-9 at 444–48, 472–73.) The notes also state that

---

that she referenced the correct examination but simply misstated the date it occurred. The error is therefore harmless. *See Poppa v. Astrue*, 569 F.3d 1167, 1172 (10th Cir. 2009)

7

Plaintiff is "doing well with [physical therapy]," her back has "no vertebral body tenderness" and a full range of motion, Plaintiff has "normal strength [and] sensation," and she is "negative for gait changes/numbness." (*Id.*) Dr. Deming's recommended course of treatment consisted of pain medication and "self-management tools" such as adopting healthy behaviors and stopping smoking. (*Id.*) Nothing in Dr. Deming's treatment notes reflects the need for a cane or any other ambulatory device, nor is there any indication that Plaintiff struggled to walk or that she could not sit or stand for long periods of time, as Dr. Deming indicated in the Medical Source Statement.

Accordingly, the Court finds no error in the ALJ's conclusion that Dr. Deming's opinion was inconsistent with the evidence in the record, including her own treatment notes and that, accordingly, it should be given little weight. *See Vigil v. Colvin*, 805 F.3d 1199, 1202 (10th Cir. 2015) ("The ALJ's finding that [the doctor's] restrictions on standing and walking were inconsistent with his own examination findings is a good reason for giving that medical opinion only moderate weight.").

*b. Dr. Peter Weingarten*

Dr. Weingarten was a consulting examiner who conducted a one-time evaluation of Plaintiff on October 26, 2015. As a result of that evaluation, Dr. Weingarten opined that Plaintiff "demonstrated mild disc degeneration in the mid and lower lumbar spine with moderate-to-severe facet osteoarthritis throughout." (Doc. # 11-10 at 541.) He also submitted a Medical Source Statement of Ability to Do Work-Related Activities to the Social Security Administration wherein he concluded that Plaintiff could frequently lift or carry up to 10 pounds but never anything greater. (*Id.* at 544.) He added that

Plaintiff sit, stand, and walk for one hour at a time each, and that, within an 8-hour workday, she could sit for 3–4 total hours and walk or stand for 3 additional total hours each, with no need for an ambulatory device. (*Id.* at 545.) Dr. Weingarten also opined that Plaintiff could never climb stairs, ramps, ladders, or scaffolds, balance, stoop, kneel, crouch, or crawl and could never be exposed to unprotected heights or moving mechanical parts. (*Id.* at 547.)

In assessing Dr. Weingarten's opinion, the ALJ concluded, pertinent part:

> Dr. Weingarten's opinion is given some weight to the extent that it supports the light residual functional capacity with environmental restrictions. There is no support as to the [Plaintiff's] limited lifting of only 10 pounds and her being able to perform no postural activities. Even during his own examination, the [Plaintiff] was able to perform forward flexion of within 15 inches of toe touch, exhibited negative straight leg raising, normal motor examination, and normal deep tendon reflexes (Exhibit 17F, pg 5). Moreover, the [Plaintiff's] being able to never perform any postural activities seems inconsistent with Dr. Weingarten's opining [her] able to stand for a total of three hours and walk for three hours.

(Doc. # 11-2 at 93–94.)

Plaintiff argues that Dr. Weingarten's opinion should have been given more weight because he is an examining physician. After reviewing the relevant portions of the record, the Court finds that the ALJ was justified in her decision to accord Mr. Weingarten's opinion "some weight."

The applicable regulations provide that the ALJ should give "more weight to the medical opinion of a source who has examined [the claimant] than to the medical opinion of a medical source who has not examined [the claimant]." 20 C.F.R. §

9

404.1527. However, the ALJ is not required, as Plaintiff suggests, to give Dr. Weingarten's opinion controlling weight. Indeed, the ALJ must evaluate the "supportability" of the medical opinion and its "consistency" with other evidence in the record to determine what weight is appropriate. *Id.* Here, the ALJ so evaluated.

In pertinent part, Dr. Weingarten's assessment of Plaintiff states that she "does not manifest pain-related behavior although prolonged sitting causes discomfort"; can reach within 15 inches of her toes; can perform lateral twists and tilts; has "normal" motor function and deep tendon reflexes; does not need a cane or any limitation in the use of her hands; and can perform straight leg raising tests that are "full and free and not painful." (Doc. # 11-10 at 542.) These findings, among others, are inconsistent with Dr. Weingarten's recommended postural and lifting limitations, particularly considering that Dr. Weingarten also recommended that Plaintiff could stand and walk for a total of six hours without any assistance. (*Id.*) It also appears that the ALJ incorporated some of Dr. Weingarten's opinion into her RFC: she restricted Plaintiff's lifting capacity, limited her to standing or walking 6 hours or less per day, limited her to the occasional climbing of ladders, and allowed for no hazardous heights. (Doc. # 11-2 at 88.) The Court therefore finds no error in the weight given to Dr. Weingarten's opinion.

Plaintiff also argues that Dr. Weingarten's opinion supports that her "lumbar spine impairment met or medically equaled Listing 1.04(A)" of the impairments set forth in 20 C.F.R. § 404, rendering her "disabled" at step three of the evaluation process. The Court upholds the ALJ's contrary conclusion because there is sufficient evidence in the record to support the ALJ's finding that Plaintiff does not satisfy all the specified

criteria for that listed impairment. For instance, to qualify under Listing 1.04(A), Plaintiff must present evidence of, among other things, "motor loss . . . accompanied by sensory or reflex loss" and "positive straight-leg raising test (sitting and supine)." 20 C.F.R. Pt. 404, subpt. P, App. 1, § 1.04. Dr. Weingarten documented normal straight-leg raising and a normal motor exam. (Doc. # 542.) And, as mentioned, Dr. Deming's notes reflected "normal strength [and] sensation" with normal motor functions; other medical examinations also demonstrated normal strength, reflexes, and sensation. The ALJ did not, therefore, err in determining that Plaintiff did not meet one of the listed impairments in 20 CFR Part 404.

   *c. Dr. Frederick Leidal*

Dr. Leidal was a consulting psychologist who conducted a one-time evaluation of Plaintiff on August 14, 2015. As a result of that evaluation, Dr. Leidal opined that Plaintiff's intelligence appeared to be "borderline to low average," with mild-to-moderate[2] impairment in her ability to understand, remember, and carry out complex instructions and to make judgments on complex work-related decisions. (Doc. # 11-9 at 460.) He also found Plaintiff to be mildly impaired in her ability to interact with the public, supervisors, and co-workers and to respond appropriately to usual work situations and changes to routine, adding that Plaintiff suffers from "some depression related to life stressors." (*Id.* at 461.)

---

[2] The Medical Source Statement defines "mild" as "a slight limitation in this area by the individual can generally function well" and "moderate" as "more than a slight limitation in this area but the individual is still able to function satisfactorily." (Doc. # 11-9 at 460.)

In assessing Dr. Leidal's opinion, the ALJ gave it "considerable weight" and concluded:

> Dr. Leidal's own examination and the overall treatment records support that the claimant would likely be unable to perform the complex tasks involved with skilled work, but would not be entirely precluded from the less demanding requirements of semi-skilled work learned in six months or less. Treatment notes show that the claimant's depression has improved with conservative medication and therapy. Moreover, Dr. Leidal's own mental status testing showed the claimant to have fair forethought, planning, executive functions, mental processing speed, insight, analytical skills, problem solving, and consequential thinking with no clear attention deficits (Exhibit 9F, pg 4).

(Doc. # 11-2 at 94.)

Plaintiff argues that Dr. Leidal's opinion does not support Plaintiff's ability to perform "semi-skilled" work because that work requires multi-tasking, which Plaintiff cannot do. She also argues that the ALJ's conclusion was "circular" and that arbitrarily accepted only the portions of Dr. Leidal's opinions that supported her RFC finding.

Having thoroughly reviewed Dr. Leidal's treatment records and recommendations, the Court finds no error. Dr. Leidal did not opine that Plaintiff was unable to multi-task, as Plaintiff contends. Instead, Dr. Leidal's treatment notes reflect that Plaintiff's cognitive functioning is "fairly average"; her mental processing speed was "fair," with "no clear attentional deficits." (Doc. # 11-9 at 457.) Indeed, he notes "[e]vidence of diminished cognitive capacity was unremarkable." (*Id.*) Dr. Leidal concluded that Plaintiffs "[m]emory functions, such as, recall of present and past events or incidental memory appeared to be commensurate with intelligence" and that her

12

ability to understand complex instructions or directions in a work setting was only "moderately impaired." (*Id.* at 458.) Nowhere in Dr. Leidal's evaluation or medical source statement does it state that Plaintiff is unable to multi-task or perform work involving multiple steps. Accordingly, the ALJ's evaluation of Dr. Leidal's opinion (to which she gave "considerable weight") as supporting a finding of Plaintiff's ability to perform "semi-skilled" work is not erroneous—to the contrary, it has substantial support in the record.

The ALJ's opinion is also not "circular" as Plaintiff contends. Plaintiff highlights one sentence of the decision, ignoring the remaining context and substantial support the ALJ provided for reaching the conclusion that she did. The Court therefore rejects this argument and finds no error in the ALJ assessment of Dr. Leidal's medical opinion.

### B. SYMPTOM EVALUATION

Plaintiff further argues that the ALJ erred in evaluating her symptoms and thereby failed to comply with Social Security Ruling 16-3p. For the following reasons, the Court disagrees and finds no error.

SSR 16-3p provides that the ALJ must follow a two-step process when evaluating an individual claimant's own description or statements about her physical or mental impairments, i.e. her symptoms. 2016 WL 1119029, *2. First, the ALJ must determine whether medical evidence shows that the claimant has impairments that could reasonably cause the claimed symptoms. *Id.* at *3. Second, the ALJ must evaluate whether the claimant's complaints regarding the intensity, persistence, and limiting effects of her symptoms are consistent with and supported by the objective

medical evidence in the record as a whole. *Id.* at *4. The SSR 16-3p makes clear that a claimant's declared "symptoms alone are not enough to establish the existence of a physical or mental impairment or disability." *Id.* Instead, they must be compared to objective medical evidence in the record. *Id.*

Here, the ALJ performed the required two-step evaluation and concluded:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

(Doc. # 11-2 at 89.) The ALJ then clearly articulated significant evidentiary support for her conclusion, including but not limited to the following findings:

- Although treatment notes confirm chronic low back pain and joint pain, they contain no objective findings that corroborate Plaintiff's allegations of *disabling* functional limitations.

- Plaintiff has mostly been treated conservatively for her pain, including the use of anti-inflammatories, gabapentin, muscle relaxers, and lidocaine patches, rather than surgery or other more invasive procedures.

- Although Plaintiff alleged disabling back pain since March 31, 2012, the treatments notes from that time show sparse and unremarkable findings and conservative medical recommendations, including
    - a report from August 2011 showing 5/5 strength in the lower extremities and simple recommendations to lose weight and exercise;

14

- - a second report from August 2012 recommending exercise and Tylenol for lower back pain; and
  - a third report from February 2013 which reflects Plaintiff as being "fully capable of working" but needs "accommodation to get up from her desk every few hours to walk around and stretch her back." (Doc. # 11-8 at 395.)
- Subsequent treatment notes from 2013, 2014, and early 2015 show some chronic back pain and positive straight leg raising tests but no weakness, gait changes, muscle spasms, or vertebral tenderness and a full range of motion and sensation. These notes also reflect that conservative medical treatment protocols, such as anti-inflammatories and non-narcotics pain medication, seemed to help Plaintiff with paraspinal tenderness.
- In mid-2015, medical reports show some increased medical intervention in the form of spinal injections. Although Plaintiff testified that the injections provided no relief, the medical report indicates that she reported otherwise to her doctors—stating instead that the injections "helped" and that she was "doing well and tolerating meds."
- In late 2015, medical imaging revealed mild disc degeneration in the mid-to-lower spine with moderate-to-severe facet osteoarthritis throughout. However, an orthopedic consult with Dr. Weingarten revealed that, although Plaintiff experienced some degenerative changes throughout the lumbar

spine, Plaintiff did not manifest significant pain-related limitations to her gait; motor functions; or her ability to sit or walk.

- December 2015 treatment notes showed that, although Plaintiff had "moderate diffuse tenderness in the lower back" and a "positive straight leg raising test," she had a good range of motion and, again, only conservative treatment (injections and non-narcotic pain medication) was recommended.

- In March 2016, Plaintiff underwent a surgical consultation. Surgery was not recommended. Indeed, neurological findings revealed Plaintiff to be in no acute distress. Her motor examination revealed normal bulk and tone with motor strength at 5/5 and equal throughout. The recommendation was for weight loss, physical therapy, and smoking cessation "with *possible* left L4-S and L5-S I discectomy and decompression."

(Doc. # 11-2 at 89–93.)

Based on this and other evidence, the ALJ then concluded that "the evidence presented establishes the existence of impairments that appear to interfere with [Plaintiff's] functioning, but not to the extent that she is disabled." (*Id.* at 93.) Having thoroughly reviewed the record, the Court declines to disturb the ALJ's conclusion because it is supported by substantial evidence in the record. Indeed, as detailed above and thoroughly reviewed by this Court, the objective medical evidence shows significant inconsistences regarding the intensity, persistence, and limiting effects of Plaintiff's claimed symptoms. Although Plaintiff highlights other medical evidence that supports her symptoms and demonstrates that those symptoms have worsened over

time, such evidence is insufficient to support a reversal of the ALJ's well-reasoned and substantially supported decision. Indeed, symptom assessment is "peculiarly the province of the [ALJ], and [the Court] will not upset such determinations when supported by substantial evidence." *Diaz v. Sec'y of Health & Human Servs.*, 898 F.2d 774, 777 (10th Cir. 1990). Plaintiff's arguments amount to little more than a request that this Court re-weigh the evidence, which this Court may not do. *See Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (The Court may not "displace the agency's choice between two fairly conflicting views" or "reweigh the evidence or substitute our judgment for the Commissioner's.").

### C. NEW EVIDENCE ON APPEAL

Last, Plaintiff contends that "new and material evidence was submitted to the Appeals Council in this case, consisting of evidence demonstrating that [Plaintiff's] impairments were disabling" and that the Appeals Council erred in declining to consider it. This Court disagrees and finds no error.

Plaintiff submitted evidence to the Appeals Council demonstrating a shoulder impairment. She specifically submitted medical records from August 2016 to March 2017—some of which indicate, for the first time, that Plaintiff was experiencing "elbow swelling" and pain that would "occasionally radiate to the shoulder" in August 2016 and that she consequently underwent shoulder debridement surgery in December 2016. (Doc. # 11-2 at 7–75.) The Appeals Council reviewed and rejected this evidence, finding no "reasonable probability that it would change the outcome of the [ALJ's] decision." (*Id.* at 2.) Having reviewed the newly submitted evidence, the Court agrees.

17

The vast majority of this evidence does not relate to the period on or before the date of the ALJ's decision and is not, therefore, relevant. The remainder of the evidence demonstrates that, although Plaintiff may have experienced a painful shoulder issue, that issue has apparently not persisted post-surgery. (*Id.* at 2–43.) There is indeed no indication from the newly submitted records that Plaintiff sought or obtained any follow-up treatment for her shoulder or elbow condition after December 2016. (*Id.*) It is, therefore, highly unlikely and not reasonably probable that this evidence would have changed the outcome of the ALJ's decision. The Court accordingly finds that the Appeals Council did not err in so concluding.

## V. CONCLUSION

For the foregoing reasons, the decision of the ALJ denying Plaintiff's request for disability benefits is AFFIRMED.

DATED: June 28, 2018

BY THE COURT:

*Christine M. Arguello*

CHRISTINE M. ARGUELLO
United States District Judge